IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **DEAN FOX**, <br><br> *Plaintiff,* <br><br> v. <br><br> **REPRESENTATIVE JEREMY FAISON**, State Representative, representing the 11th District of the Tennessee House of Representatives, in his official capacity, <br><br> *Defendant.* | Case No.: 3:22-cv-00691 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION**

I.      **Introduction**

On September 6, 2021, Plaintiff Dean Fox was impermissibly blocked from engaging with Defendant State Representative Jeremy Faison's official Facebook page—entitled "State Representative Jeremy Faison"—immediately after posting a critical comment on the online public forum. In response to the comment, Representative Faison impermissibly deleted Mr. Fox's comments and blocked Mr. Fox from viewing or commenting on the page. Ex. A, Fox Aff. ¶¶ 5, 10. Representative Faison's use of social media in his official capacity—"under color of state law"—is governed by the First Amendment's prohibition on viewpoint discrimination, which requires protection of critical speech on public forums. *See Lindke v. Freed*, 37 F.4th 1199, 1202–03 (6th Cir. 2022); *Phillips v. Tangilag*, 14 F.4th 524, 532 (6th Cir. 2021)

(concluding Section 1983 actions are available when the defendant's action was taken "under color of state law"). Mr. Fox remains blocked, unable to see posted content through his account or engage with others on Representative Faison's page.

Mr. Fox therefore seeks a preliminary injunction ordering Representative Faison to unblock Mr. Fox from the "State Representative Jeremy Faison" Facebook page and ensure compliance with viewpoint discrimination protections on the public forum. The preliminary injunction should be granted because Mr. Fox is likely to succeed on the merits, he is likely to suffer irreparable harm in the absence of an injunction, granting the injunction would not cause substantial harm to others, and the injunction would advance the public interest. *See Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009).

## II.     Statement of Facts

Mr. Fox is an adjunct professor at Middle Tennessee State University where he teaches media-related courses. Compl. ¶ 8. He is also a freelance sports journalist with work published in the Daily News Journal (Murfreesboro) and the Atlanta Journal-Constitution. *Id*. Jeremy Faison is the Representative for the 11th District in the Tennessee House of Representatives, which includes Cocke County and parts of Jefferson and Greene Counties. Representative Faison operates legislative offices in Nashville and Cosby, Tennessee. *Id.* ¶ 9.

### A.  The "State Representative Jeremy Faison" Facebook Page Is an Online Public Forum

In 2015, halfway through his third term in the Tennessee House of Representatives, Jeremy Faison created the "State Representative Jeremy Faison" Facebook page. *Id.* ¶¶ 20–21. Facebook has "verified" the page, indicating the account is the authentic profile for Representative Faison as a public figure. *Id.* ¶ 22. Facebook grants verified status to pages of notable individuals, including elected officials, only after confirming that the page is "the

authentic presence of the public figure" it represents.[1] Representative Faison's page bears a blue check-mark emblem next to the page name to show that it is verified. *Id.* His page category is listed as "Politician." *Id.*

Representative Faison uses the Facebook page to identify himself as a government official and communicate with his constituency. The page introduction states, "Jeremy Faison is representative of Tennessee's 11th district representing the people of Cocke County." *Id.* ¶ 26. Similarly, the "About" section states, "I serve as the Tennessee State Representative for HD [House District] 11." *Id.* ¶ 27. This official page is distinct from Jeremy Faison's personal Facebook account, which Facebook has not verified or labeled as belonging to a politician. *Id.* ¶ 31. On the "State Representative Jeremy Faison" page, many former profile pictures show Representative Faison speaking at the Tennessee General Assembly. *Id.* ¶ 30. The cover photo of the page uses Representative Faison's logo, "Jeremy Faison Conservative." *Id.* ¶ 20. If someone wishes to contact Representative Faison by email, the "Send Email" link on the page connects directly to his government email address (rep.jeremy.faison@capitol.tn.gov). *Id.* ¶ 29.

Furthermore, the page is regularly used to discuss Representative Faison's policy positions and legislative agenda, as well as to promote businesses within his District. *Id.* ¶ 32. Representative Faison engages in debate on the page by replying to those who have commented on the Facebook page's posts. *Id.* ¶ 34. If an individual comments on the page in need of assistance, Representative Faison frequently shares his office phone number and encourages the individual in need of assistance to contact his office. *Id.* ¶ 33. Additionally, Representative Faison does not administer the page by himself. The "Page Transparency" section indicates that

---

[1] Facebook, About Verified Pages and Profiles, https://www.facebook.com/help/196050490547892 (last visited Sept. 1, 2022) [https://perma.cc/WE5P-AHS6] (archived Sept. 1, 2022) (denoted with a blue checkmark appearing next to the account name and in searches**.**

three people help manage the page, likely including one or more of Representative Faison's Tennessee General Assembly staff. *Id.* ¶¶ 23–24.

**B. Representative Faison Prevented Mr. Fox from Participating in Political Discourse on His Official Facebook Page**

On September 6, 2021, the Labor Day holiday, the Representative Faison page posted, "Happy Labor Day – the people of Tennessee deserve a holiday for always getting the job done!" *Id.* ¶ 36. The post contained Representative Faison's logo. *Id.* ¶ 38. A personal account from the user Ray Barnes commented "It's great to be appreciated . . . how about a raise . . .?" *Id.* ¶ 37. The "State Representative Jeremy Faison" page responded to this comment with "I guess the idea of bettering yourself with a [*sic*] education or getting a better job is just out of the question for you?" *Id.* ¶ 38. This exchange sparked debate among commenters concerning the role of government aid versus individual work ethic in producing economic prosperity. Ray Barnes replied "You seem confused. You work for us. The Government 'Gives' us nothing…we already own it. When you allow internet companies to only serve the fattest urban areas and allow the rural region to wither economically as a result you are failing your responsibility to US." *Id.* ¶ 39. Mr. Fox reacted to this comment by "liking," it, selecting the thumbs up button appearing below the comment's text. *Id.*

Using his personal Facebook account, as opposed to his "State Representative Jeremy Faison" account, Representative Faison replied "Ray Barnes because success is giving [*sic*] not earned. Yeah that's real 1900s." *Id.* ¶ 40. Then, back on his official "State Representative Jeremy Faison" account, Representative Faison replied "very unAmerican [*sic*] of you. There is always a way if you are willing to work hard enough." *Id.* ¶ 41. As a counterpoint, Mr. Fox posted a comment reminding Representative Faison that he had reaped the benefits of government support

when his business was forgiven $25,000 in Paycheck Protection Program ("PPP") loans.[2] *Id.*

¶ 42. Although Mr. Fox's comment was relevant to the ongoing discussion and consistent with

Facebook's community standards, Mr. Fox's comment about PPP loans was quickly deleted. *Id.*

¶¶ 44–45. Mr. Fox then posted again asking why his comment had been taken down. *Id.* ¶ 46. In

response to his inquiry, this new comment was also deleted, and Mr. Fox's account was entirely

blocked from viewing or engaging with the "State Representative Jeremy Faison" page. *Id.*

¶¶ 46–47.

On October 15, 2021, on Mr. Fox's behalf, the Vanderbilt Law School First Amendment

Clinic sent a letter to Representative Faison's office. This letter informed Representative Faison

that blocking Mr. Fox's ability to comment on the page violated the First Amendment. *Id.* Ex. B.

Plaintiff's attorneys called Representative Faison's office on February 9, 2022, and spoke to a

staff member who instructed counsel to send an email to request a meeting. Plaintiff's attorneys

sent a message to the provided email address the same day, attaching a copy of the prior

correspondence sent in October 2021. *Id.* Ex. C. In a further attempt to reach out to

Representative Faison's office, Plaintiff's attorneys again emailed Representative Faison's office

on August 26, 2022, attaching a letter requesting that Representative Faison unblock Mr. Fox

from viewing or engaging with the "State Representative Jeremy Faison" Facebook page. *Id.* Ex.

D. This communication was likewise met with no response. Mr. Fox remains blocked from

viewing or engaging in policy discussions on the "State Representative Jeremy Faison" official

Facebook page. *Id.* ¶ 53.

---

[2] Representative Faison is the owner of Rocky Top Pest Control and Home Services LLC, which
received a Paycheck Protection Program loan in the amount of $23,875. *See*
FederalPay.org, https://www.federalpay.org/paycheck-protection-program/rocky-top-pest-
control-and-home-services-llc-newport-tn (last visited Sept. 1, 2022) [https://perma.cc/J42N-
CVPR] (archived Sept. 1, 2022).

### III.    Legal Standard

A party seeking a preliminary injunction must show (1) a "likelihood that the movant will succeed on the merits"; (2) that "the movant will suffer irreparable harm" if the injunction is not granted; (3) a "probability that granting the injunction" will not "cause substantial harm to others"; and (4) that the injunction advances the public interest. *Caruso*, 569 F.3d at 265. The considerations "are factors to be balanced, not prerequisites that must be met." *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004) (citing *Washington v. Reno*, 35 F.3d 1093, 1098 (6th Cir. 1994)). In First Amendment cases, "'the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits'" because "'the issues of the public interest and harm to the respective parties largely depend on the constitutionality.'" *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (quoting *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884, 888 (6th Cir. 2000)).

### IV.    Argument

Unless enjoined, Representative Faison will continue to violate Mr. Fox's First Amendment rights, causing him irreparable harm. In contrast to Mr. Fox's ongoing injury, granting preliminary relief will not substantially harm others and simply requires that Representative Faison restore Mr. Fox's First Amendment–protected access to the Facebook page. Removing barriers to open discussion in public forums and preventing further constitutional injury also furthers the public interest. For these reasons, a preliminary injunction is appropriate.

#### A.  Mr. Fox Is Likely to Succeed on the Merits of His Claim

##### 1.  Representative Faison Suppressed Protected Speech on a Public Forum in His Role as a Public Official

Representative Faison's deletion of Mr. Fox's comments and blocking Mr. Fox from viewing or engaging with the official "State Representative Jeremy Faison" page constitutes state action under the Sixth Circuit's "state-official test" because (1) Representative Faison's social media activity is part of his "actual or apparent" duties as a state official and (2) his social media activity could not "happen in the same way without the authority of the office." *See Lindke*, 37 F.4th at 1202–04 (citation omitted) (internal quotation marks omitted).

First, Representative Faison's "State Representative Jeremy Faison" page relates to his actual or apparent duties as a member of the Tennessee House of Representatives. *See id*. As in *Davison*, where the chair of a county board of supervisors blocked a user from her Facebook page that she used to "further her duties as a municipal official," Representative Faison uses his page "as a tool of governance" to further official duties and provide information to the public. *Davison v. Randall*, 912 F.3d 666, 680 (4th Cir. 2019) (citation omitted). The posts on Representative Faison's page are addressed to constituents, the page is used for "back and forth constituent conversations," and "the content posted has a strong tendency toward matters related to [Defendant's] office." *Id*. at 681 (internal quotation omitted); *see also Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 234 (2d Cir. 2019) (considering "evidence of the official nature of the Account" in determining that former President Trump's Twitter page was a public forum). For example, in a comment on November 19, 2021, the "State Representative Jeremy Faison" page offered his office's support to a constituent struggling to obtain state unemployment benefits by stating, "If you will send me your info, I will work on it Monday. Rep.jeremy.faison@capitol.Tn.gov." Ex. B, Nov. 19, 2021 Facebook Thread. On October 21, 2021, the "State Representative Jeremy Faison" page offered his office's broad support by posting "If you . . . are struggling with the state unemployment office, please call my office and we will do everything we can to make sure you are taken care of. 615-741-6871."

Compl. ¶ 33. On March 23, 2022, the page solicited constituent feedback concerning potential legislative action by asking its followers for input on options for reducing state taxes. *Id.* ¶ 32. This post elicited nearly 160 comments that Representative Faison, frequent sponsor and co-sponsor of legislation and leader in the Republican Majority Caucus, could incorporate into legislative decisions. *Id.* Therefore, unlike the city manager's personal page in *Lindke*, engaging with constituents and offering his office's support through the "State Representative Jeremy Faison" official page is an extension of Representative Faison's actual or apparent duties as a state representative. *See* 37 F.4th at 1203–04.

Second, Representative Faison's power to assist and engage with citizens through his "State Representative Jeremy Faison" page is "possessed by virtue of state law and made possible only because [he] is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation omitted) (holding that action "fairly attributed to the State" is under the color of state law for purposes of a Section 1983 claim); *see Lindke*, 37 F.4th at 1203–04. Without the authority provided by his Tennessee General Assembly office, Representative Faison would not have the government resources to support, or offer to support, constituents who seek government assistance through his official page. Similarly, Representative Faison would not be in a position to act upon the feedback elicited from constituents engaging with his page. As the Sixth Circuit held in *Lindke*, an officeholder operates a social media account pursuant to his state authority when the "page . . . draw[s] on [the] officeholder's authority over government staff." *Id.* at 1204. Under the "Page Transparency" section, Representative Faison's official page is managed by three different people, potentially including his government staff members. Compl. ¶¶ 23–24. Representative Faison's reliance on the authority of his office and potential use of government resources (whether government staff or government-provided technology

equipment) in managing his official Facebook account transforms activity on this page into state action. *See Lindke*, 37 F.4th at 1204.

Third, Representative Faison relied on his state authority to create his "State Representative Jeremy Faison" page. When analyzing Representative Faison's social media activity, it is important to consider the page as a whole, rather than individual characteristics or posts, because "[l]ooking too narrowly at isolated action without reference to the context of the entire page risks losing the forest for the trees." *Id.* at 1203. Considering his account holistically, Representative Faison's official page is similar to the *Davison* account in that "[a] private citizen could not have created and used [the] Facebook page in such a manner." 912 F.3d at 681 (citation omitted). Representative Faison's public page bears a "Politician" label and describes him as "representing the people of Cocke County." Compl. ¶¶ 22, 26. Facebook "verified" Representative Faison's official government page, which would not have been possible without the authority of his office. *Id.* ¶ 22. Clicking on the "Send Email" button on the page opens an email addressed to Representative Faison's government-issued and maintained email address, rep.jeremy.faison@capitol.tn.gov. *Id.* ¶ 29. Furthermore, unlike the Facebook page at issue in *Lindke*, which was originally created as a personal profile and later updated to reflect the official's appointment to office, Representative Faison created his Facebook page only after he had been elected to state office. *See* 37 F.4th at 1201; Compl. ¶ 21. The official page was not for personal use because Representative Faison maintains a separate Facebook profile in his capacity as a private citizen. Compl. ¶ 32. Taken together, these factors demonstrate that Representative Faison's official page was created based on his authority as a state representative.

Finally, because the page does not exist "overwhelmingly for campaign purposes," it is properly characterized as a public forum. *See Campbell v. Reisch*, 986 F.3d 822, 826 (8th Cir. 2021). Unlike *Campbell*, where the Eighth Circuit held that a state representative's Twitter

account was private because she created it to run for office and most posts related to campaigning, Representative Faison's page is not used primarily for campaign purposes. *See id.* Representative Faison did not create the "State Representative Jeremy Faison" page to run for office, having established the page in late 2015, over five years after his initial election to public office and nearly a year before his reelection bid. Compl. ¶ 21. Although Representative Faison's page shares certain campaign-related posts at times, the overwhelming majority of the posts concern policies Representative Faison supports, issues and news within his district, and general political discussions. *See* Compl. ¶¶ 32–34.

## 2. Representative Faison Unconstitutionally Discriminated Based on Viewpoint When He Deleted Mr. Fox's Comments and Blocked Mr. Fox

It is unconstitutional for government officials, including Representative Faison, to censor speech "merely because [they] disapprove the speaker's views." *See Consol. Edison Co. v. Public Serv. Comm'n*, 447 U.S. 530, 536 (1980) (citation omitted). Viewpoint discrimination is impermissible in public forums such as the "State Representative Jeremy Faison" Facebook page because the right to voice opinions on matters of public interest "occupies the core of the protection afforded by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346; *see also Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469–70 (2009) (viewpoint discrimination is forbidden in public forums).

Representative Faison was "impermissibly motivated by a desire to suppress a particular point of view" when he blocked Mr. Fox. *Davison*, 912 F.3d at 687 (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 812–13 (1985)). During a discussion with one of his constituents, Representative Faison emphasized that people should rely on self-improvement to better themselves economically and not expect government handouts. Compl. ¶¶ 36–41. As a counterpoint, Mr. Fox commented that Representative Faison had benefitted from

government financial aid when his PPP loans were forgiven. *Id.* ¶¶ 42–43. Mr. Fox's comments were not spam, harassment, abuse, defamation, or otherwise in violation of Facebook's Community Standards. Ex. A ¶ 8; Compl. ¶ 44. Instead, Mr. Fox added a point salient to ongoing discourse, but the comment was quickly deleted. Ex. A ¶ 9. After asking why his previous post was removed, Mr. Fox was immediately banned from viewing or engaging with Representative Faison's official page. *Id.* ¶ 10.

The proximity in time and the absence of other intervening statements indicate Mr. Fox was blocked because of the viewpoint expressed in his comment on PPP loans. Mr. Fox's comments were deleted one after the other in close succession before he was subsequently blocked, which occurred almost immediately after Mr. Fox expressed a fact perceived as critical of Representative Faison. *See Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 575 (S.D.N.Y. 2018), *aff'd*, 928 F.3d 226 (2d Cir. 2019) (concluding plaintiffs being blocked shortly after posting critical tweets of the President supported the determination that they were "indisputably blocked as a result of viewpoint discrimination"); *Price v. City of New York*, No. 15 CIV 5871 (KPF), 2018 WL 3117507, at *16 (S.D.N.Y. June 25, 2018) (blocking plaintiff on social media very shortly after she posted critical comments "strongly suggest[s]" the motivation was to silence her public reproach); *Attwood v. Clemons*, 526 F. Supp. 3d 1152, 1172–73 (N.D. Fla. 2021) (explaining the short time frame between the plaintiff's comment and the defendant blocking the plaintiff contributed to a reasonable inference of viewpoint discrimination).

Mr. Fox's account remains blocked, and Representative Faison has offered no justification as to why the deletion of comments or blocking is purportedly warranted. Ex. A ¶ 11; Compl. ¶¶ 48–53; *see also Faison v. Jones*, 440 F. Supp. 3d 1123, 1136 (E.D. Cal. 2020)

(holding that plaintiffs would likely succeed in proving viewpoint discrimination when the defendant offered no justification for social media censorship). Even after repeated inquiries, Representative Faison still refuses to offer any explanation for deleting Mr. Fox's comments or blocking him from the Facebook page. Mr. Fox's comment on PPP loans was protected speech, as was his second post asking about the deleted comment. These statements, although critical and potentially unflattering to Representative Faison, are both within the scope of the First Amendment and Facebook's Community Standards, as Mr. Fox's messages were not defamatory, harassing, or abusive. Ex. A ¶ 8; Compl. ¶ 44; *see also Blackwell v. City of Inkster*, No. 221CV10628TGBEAS, 2022 WL 989212, at *12–*13 (E.D. Mich. Mar. 31, 2022) (finding plaintiff sufficiently alleged that a First Amendment violation occurred when plaintiff was blocked after criticizing a government official's lack of transparency surrounding an embezzlement investigation).

For these reasons, viewpoint suppression is the only rational explanation as to why the "State Representative Jeremy Faison" page deleted Mr. Fox's comments and then immediately blocked him from the account without justification. This critical nature of Mr. Fox's statement underscores the importance of viewpoint protections. *Attwood*, 526 F. Supp. 3d at 1161–62 (analyzing First Amendment claim where plaintiff was impermissibly blocked after asking for an explanation of the representative's voting decision); *Price*, 2018 WL 3117507, at *16 (finding allegations that a plaintiff was blocked after criticizing city agencies and officials for failing to adequately serve domestic violence victims sufficient to establish a First Amendment violation).

### 3. Representative Faison's Choice to Block Mr. Fox from the Page Is Not Protected by the Government Speech Doctrine

Representative Faison violated Mr. Fox's constitutional rights by deleting Mr. Fox's protected comments from the "State Representative Jeremy Faison" page and blocking Mr. Fox's

ongoing access. The government speech doctrine does not provide Representative Faison with a safe harbor for such conduct. *See Matal v. Tam*, 137 S. Ct. 1744, 1758 (2017) (cautioning that the "government speech doctrine is . . . susceptible to dangerous misuse"). Although the doctrine "does not require [the] government to maintain viewpoint neutrality when its officers and employees speak," Representative Faison's speech is not at issue here; rather, it is Mr. Fox's right to expression that is being restricted. *Id.* at 1757.

The government speech doctrine does not allow public officials to censor users on official media pages because the interactive, public user-participation sections are protected as public forums. *See Knight*, 928 F.3d at 239 (deciding the President's tweets can be described as government speech while other users' retweets, replies, and likes are not); *Davison*, 912 F.3d at 687 (reasoning that the controlled and curated aspects of a social media are government speech whereas the interactive portions enabling public discussion are a public forum). Although portions of social media accounts controlled by government users can qualify as government speech, public comments in the forum—like Mr. Fox's—are protected against viewpoint restrictions. *See Anderson v. Hansen*, 519 F. Supp. 3d 457, 468–69 (E.D. Wis. 2021) (recognizing District's own posts are government speech, but allowing public comments creates a public forum); *Felts v. Reed*, 504 F. Supp. 3d 978, 985–86 (E.D. Mo. 2020) (finding interactive component of social media as a public forum).

Aspects of Representative Faison's Facebook page that he has control over may be considered government speech, but the interactive portion—namely, the public comments section—constitutes a public forum. *Jones*, 440 F. Supp. 3d at 1136–37 (concluding defendant's posts qualify as government speech, but plaintiffs' comments do not); *One Wisconsin Now v. Kremer*, 354 F. Supp. 3d 940, 954–55 (W.D. Wis. 2019) (holding interactive portions of social

media accounts constitute public forums); *Blackwell*, 2022 WL 989212, at *9 (deciding government speech doctrine is not implicated by an interactive comment section). Therefore, Representative Faison's acts did not constitute government speech, and his actions deleting Mr. Fox's comments and blocking Mr. Fox from the Facebook page are impermissible. *See Anderson*, 519 F. Supp. 3d at 469.

### B. Plaintiff Will Suffer Irreparable Harm if the Injunction Is Not Granted

Representative Faison's violation of Mr. Fox's First Amendment rights establishes irreversible harm because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373–74 (1976) (citation omitted); *see also ACLU Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 649 (6th Cir. 2015) (citation omitted) ("[E]ven minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief.").

While blocked, Mr. Fox cannot view the content posted on the "State Representative Jeremy Faison" page or the comments below Representative Faison's posts. He is also unable to comment directly on Representative Faison's posts or engage in discussions with other members of the public in the comments. Mr. Fox is deprived of his right to fully participate in the democratic process every day he remains blocked from the "State Representative Jeremy Faison" page. *See Tenn. State Conf. of NAACP v. Hargett*, 420 F. Supp. 3d 683, 711 (M.D. Tenn. 2019) (enjoining a Tennessee election law that took away "chances to participate in democracy that will never come back"). This engagement is especially important in advance of the Tennessee general elections in November. If Representative Faison's illegal restrictions are allowed to persist, Mr. Fox will be robbed of his right to participate in community discussion leading up to elections. *See Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964). Depriving Mr. Fox of the right

to engage in public discourse at any time, particularly during the election season, constitutes irreparable harm. *See Tenn. State Conf. of NAACP*, 420 F. Supp. at 711.

### C. Granting the Injunction Will Not Cause Substantial Harm to Others

Balancing the harm that Mr. Fox would suffer if the injunction is denied with the potential inconvenience to Representative Faison if the injunction is granted weighs in favor of granting the injunction. *See Caruso*, 569 F.3d at 277; *see also Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982) ("[The balancing test] permits the district court, in its discretion, to grant a preliminary injunction … where [the movant] at least shows serious questions going to the merits and irreparable harm which decidedly outweighs any potential harm to the defendant if an injunction is issued."). In contrast to the concrete and ongoing harm suffered by Mr. Fox due to the ongoing lack of access to this online forum and community, the time commitment needed for Representative Faison to make this change to the Facebook page is negligible. If a preliminary injunction is granted requiring Representative Faison to restore Mr. Fox's constitutionally protected interest, Representative Faison would be able to unblock Mr. Fox within minutes from start to finish. Unblocking users requires little time or effort and costs nothing—the relief sought here can be achieved with only a few simple clicks and an internet connection. As Mr. Fox's original comment included no inaccurate information, obscene references, threats, or profanity, unblocking Mr. Fox's Facebook account would cause no harm to Representative Faison. Ex. A ¶ 8. Any harm that Representative Faison could suffer from potential, future inappropriate comments would be limited by restrictions currently in place by Facebook, including mechanisms to remove inappropriate content.[3] Mr. Fox has no history,

---

[3] *See Facebook Transparency Center*, Facebook Community Standards, https://transparency.fb.com/policies/community-standards/ (last visited Sept. 1, 2022) [https://perma.cc/94CR-33CC] (archived Sept. 1, 2022).

including the now-deleted comments, of engaging in activity in violation of Facebook's Community Standards.

Mr. Fox's continued ability to engage with the "State Representative Jeremy Faison" page would not harm other users following or posting on Representative Faison's official Facebook page. In fact, it would do just the opposite. The First Amendment protects "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Watts v. United States*, 394 U.S. 705, 708 (1969) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)). Mr. Fox's ability to engage with other users on the page does not interfere with others' ability to do so; indeed, it furthers these important First Amendment values by contributing to the political discourse on the "State Representative Jeremy Faison" page. Weighing the harm of an ongoing violation of a constitutional right against the minimal time, effort, and resources needed to unblock Mr. Fox, the balance of equities favors granting this motion for a preliminary injunction.

### D. An Injunction Furthers the Public Interest

An injunction protecting Mr. Fox's First Amendment rights and prohibiting Representative Faison's impermissible viewpoint discrimination on a public forum would further the public interest because "prevent[ing] the violation of a party's constitutional rights" advances the social good. *Caruso*, 569 F.3d at 278 (citation omitted). In First Amendment cases, the public interest is tied to the likelihood of success on the merits. *Id.* Since Representative Faison's actions deleting Mr. Fox's comments and blocking Mr. Fox from his official "State Representative Jeremy Faison" page likely violate Mr. Fox's right to free speech, striking down the unconstitutional action advances the public interest as "the public as a whole has a significant interest in ensuring . . . [the] protection of First Amendment liberties." *Id.* Additionally,

enjoining this constitutional violation as soon as possible vindicates the public interest in the rule of law and the acceptance of constitutional government. *See Bongo Prods., LLC v. Lawrence*, 548 F. Supp. 3d 666, 686–87 (M.D. Tenn. 2021).

The public has a strong interest in learning other citizens' views about elected officials, including from potential dissenters critical of Representative Faison. *See Garrison*, 379 U.S. at 74–75. Blocking Mr. Fox from sharing these views prevents Representative Faison, and the public, from seeing them. The blocking denies Mr. Fox full participation in our democracy and restricts public access to First Amendment–protected statements. Allowing public commentary and dissent is essential to our system of governance, especially as the Tennessee general elections are rapidly approaching on November 8, 2022. This election cycle is a critical time to protect Tennessee citizens' ability to exercise their First Amendment rights to engage in political discourse on public forums like the "State Representative Jeremy Faison" Facebook page without government officials' suppression of citizens' permissible comments. *See Roth v. United States*, 354 U.S. 476, 484 (1957) ("The protection given speech and press was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people."); *Garrison*, 379 U.S. at 74–75 ("[S]peech concerning public affairs is more than self-expression; it is the essence of self-government."). Therefore, granting the motion for preliminary injunction advances the public interest by protecting the freedom of individuals to express diverse viewpoints and affirming the fundamental principle that government officials may not censor permissible speech on public forums.

## V. Conclusion

Mr. Fox is likely to succeed on the merits of his First Amendment claim. Mr. Fox is suffering, and will continue to suffer, irreparable harm to his First Amendment rights if the

preliminary injunction is not granted. Granting the preliminary injunction would cause minimal inconvenience to Representative Faison, and any potential harm is far outweighed by the infringement on Mr. Fox's constitutional rights. Finally, the public interest favors protecting robust social commentary. For these reasons, this court should grant the motion for preliminary injunctive relief.

Respectfully submitted,

/s/ Susan L. Kay
Susan L. Kay
Susan.kay@vanderbilt.edu

Jennifer Safstrom*
Jennifer.safstrom@vanderbilt.edu

* Tennessee admission and pro hac vice application pending

Vanderbilt Law School Stanton Foundation First Amendment Clinic
131 21st Ave South
Nashville, TN 37203-1181
Telephone: (615) 322-4964

William Anderson**
Skylar Burton**
Daniel Kopolovic**
Jamie Michael**

---

** These law students substantially assisted with the preparation of this filing. Application for limited admission is forthcoming pursuant to U.S. District Court Middle District of Tennessee Administrative Order No. 155-1.

# Exhibit A

**September 2, 2022, Affidavit of Dean Fox in Support
of Plaintiff's Motion for Preliminary Injunction**

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **DEAN FOX,** | |
| *Plaintiff,* | |
| v. | Case No.: |
| **REPRESENTATIVE JEREMY FAISON**, State Representative, representing the 11th District of the Tennessee House of Representatives, in his official capacity. | |
| *Defendant.* | |

### AFFIDAVIT OF DEAN FOX IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Dean Fox, pursuant to 28 U.S.C. § 1746, hereby declares as follows in support of

Plaintiff's Motion for Preliminary Injunction:

    1.    I am over 18 years of age, of sound mind, and otherwise competent to make this

Declaration. The evidence set out in the foregoing Declaration is based on my personal

knowledge.

    2.    I am an adjunct professor at Middle Tennessee State University, where I teach

classes in graphic design, visual communications, and media writing. I am also a

freelance sports journalist and my work has been published in the Daily News Journal (Murfreesboro) and the Atlanta-Journal Constitution, among other publications.

3.    I am a current resident of Knox County, Tennessee. I moved to Knox County from Rutherford County on or around July 14, 2022. The events giving rise to this complaint and preliminary injunction occurred while I was located in Rutherford County, Tennessee.

4.    I control and operate a personal Facebook profile. I use Facebook regularly to stay informed about legislative decisions in Tennessee and engage in policy discussions.

5.    On September 6, 2021, the official Facebook page of State Representative Jeremy Faison ("Representative Faison"), which is entitled "State Representative Jeremy Faison," shared a post commemorating Labor Day.

6. After another user commented on the post, Representative Faison responded to the comment, writing "I guess the idea of bettering yourself with a [*sic*] education or getting a better job is just out of the question for you?"

7. Representative Faison concluded the exchange by writing "very unAmerican [*sic*] of you. There is always a way if you are willing to work hard enough."

8.    After Representative Faison's exchange with the other user, I also commented on the post. In my comment, I wrote that the Representative's criticisms of the constituent's work ethic were hypocritical because the Representative received $25,000 in Paycheck Protection Program loans that were forgiven by the federal government. The comment did not include inaccurate information, any threatening or foul language, nor did it violate Facebook's terms of use in any way.

9. Thereafter, a Representative Faison page administrator deleted my comment regarding my view about Representative Faison's conduct.

10. I commented again and asked why my first comment was deleted. Immediately after, a Representative Faison page administrator deleted my second comment and blocked me from making future comments on his Facebook page's posts.

11. To this day, I am unable to view or interact with the contents of Representative Faison's official Facebook page. I cannot view his posted content, comment on posts, or view content other users have posted on the Representative's Facebook page from my account. Representative Faison's official page does not appear when I search his name on Facebook.

12. If I were not currently blocked, I would be continuing to view and comment on Representative Faison's official Facebook page. I feel it is important for me to be able to view Representative Faison's social media postings because his actions effect all Tennesseans, including mine and my family's.

I declare under penalty of perjury that the foregoing is true and correct. Executed on Sep. 2, 2022.

/s Dean Fox
Dean Fox

Subscribed and sworn to before me in my
Presence, this 2ND day of SEPTEMBER
2022, a Notary Public in and for the
County of KNOX  State of TENNESSEE
(Signature)          Notary Public
My commission expires Oct 7, 2024

# Exhibit B

## November 19, 2021, Facebook Thread



**Brandy Campbell Henderson**
We the former employees of ConAgra would love to know why it's taking so long to get our unemployment. Some of the employees have been laid off 6 weeks. Still haven't received anything.
Employees such as myself. It has been almost 4 weeks since being laid off and still haven't received an unemployment check.
My status keeps reading In Progress.

Like    Reply    18w                                    👍 4

✏️ Author
**State Representative Jeremy Faison** ✔️
**Brandy Campbell Henderson** if you will send me your info, I will work on it Monday.
Rep.jeremy.faison@capitol.Tn.gov

Like    Reply    18w                                    👍🥰 9

**Brandy Campbell Henderson**
**State Representative Jeremy Faison** what all information do you need me to send you?

Like    Reply    18w                                    👍

✏️ Author
**State Representative Jeremy Faison** ✔️
**Brandy Campbell Henderson** name and #

Like    Reply    18w                                    👍